With the attorneys for our next and last case, please approach the podium and take questions. Tell us who you are and who you represent, starting with the attorney for the appellant. May it please the court, my name is Brett Stecker, I'm an attorney with the Weiser Law Firm. We represent the plaintiff, Brian Asias. Who's next? Good morning, your honors. My name is Rachel Skistis, I'm from the law firm of Cravath, Swain and Moore, LLP, and I represent Huron and the outside directors. It's S-K-A-I-S-T-I-S. Good morning, David Gordon from Sidley Austin, LLP. I'm here on behalf of Gary Burge, one of the defendants, and also here to make the arguments also on behalf of defendants Gary Holdren and Wayne Lipsky. We filed a separate brief, the three of us together. Thank you. Lastly? Good morning, your honors. Jennifer Cowan, C-O-W-E-N, from Kirkland and Ellis, LLP. I'm here on behalf of defendant Price Waterhouse Coopers. Each side is 15 minutes, we understand, have you discussed on the appellee side how you are going to divide this? We are not going to hold you exactly to 15 minutes, although, speaking for me, it's pretty straightforward stuff. Have you figured this out yet, what you want to do? I'm going to try to take about eight to nine minutes tops. And you represent Price Waterhouse?  I represent Price Waterhouse. I'm sorry, Price Waterhouse. I wanted to hear how much time, go ahead. How much time do you think you need? Two minutes at the most. That sounds kind of long. Okay. All right. And other counsel? Very good. Looking forward to it. We will hold you to it. Yes, let us know. We won't. All right, anytime we are ready. Mr. Stecker. Again, my name is Brett Stecker, may it please the court, I'd like to present on behalf of the appellant, Brian Asias. Here, the circuit court of Cook County, we believe, made a series of reversible errors, each of which independently would warrant a reversal and a remand, but which together we think undoubtedly warrant reversal and remand. With respect to the issue of demand futility, that was the only issue that was reached in the circuit court's decision. As the court is aware, this is a shareholder derivative action that was brought under Delaware law because Huron Consulting Group, although its headquartered here in Illinois, was incorporated under Delaware law, so Delaware substantive law applies to the demand futility requirement. Under Delaware law, a shareholder is required to make a demand on the board prior to bringing a shareholder derivative suit unless there is reason to believe that a demand would be futile. Here, demand was futile because a majority of the directors on the Huron Consulting Group board were non-independent. They were non-independent because they received director fees which were abnormally high, ranging for five of the six members of Huron's board anywhere between $312,000 and $370,000. So our allegation was that due to these abnormally high director fees, a majority of the board was non-independent and therefore could not have properly and independently responded to a demand. Counselor, I'm going to ask this. Under the Aronson and Rales cases, aren't there certain steps that you need to take and your complaint needs to contain relative to meeting those standards in those cases? Certainly. We are, it is a high hurdle to allege demand futility. It must be alleged with particularized facts. And we believe that we met this burden because with respect to the director fees, we showed with a comparison of director fees of Huron to the largest Fortune 500 companies that Huron's director fees far exceeded those of those other companies. And by the way, those other companies have revenues and market capitalizations which are magnitudes larger than that of Huron. Did you say that's somewhat conclusory though or that's a fact? It's a fact. We presented a chart. But that existed. The numbers exist. Yes, correct. The numbers exist. Those were from publicly available filings. In addition, we also submitted a survey or rather a study that was performed by Fortune Magazine which showed that in the year 2008, I think it was 4% of the publicly traded companies in the S&P 500, I believe it was a survey of close to 500 companies, 491 I believe, that about 4% have director fees of $400,000 or higher. Now Huron's fees were not at the $400,000 level, but they certainly approached that. They were between $312,000 again and $370,000, averaging over $330,000. And we clearly believe that this would give a reasonable shareholder reason to doubt the independence of those directors. The general rule under Delaware law is that outside directors are presumed independent. And the receipt of ordinary or typical director fees is not enough to raise a reasonable doubt as to their independence. There is no dispute as to that general rule. Inside directors, however, the ones who are full-time employees of the corporation are under Delaware law not independent for purposes of demand. This is a common sense rule. Basically the rationale behind it is that if your full-time job is that you're an employee of a corporation and you're also a director, that to take action in response to a pre-suit demand, you might jeopardize your full-time employment. Of course, full-time employment is what we use to pay our bills and to fund educations and it's a common sense rule. That does not apply with respect to outside directors, however, the Delaware courts have repeatedly emphasized that that is not an unvarying rule, that is not a mechanical presumption, and that using the contextual approach that Delaware law requires, a director based on conditions which exceed those which are typical or customary, even if they're an outside director, can be deemed non-independent for purposes of demand futility. Can I ask you some procedural questions? As far as the 2619 motion that was filed by the defendants here, I think you claim that Delaware's law should be used to interpret that 2619 motion, or explain that to me, please. No, no, that's not our claim. This is, of course, a case that's been brought in Illinois State Court, but brought under Delaware substantive law. The demand futility analysis is a substantive Delaware analysis. That is to be determined under Delaware substantive law. Of course, Illinois' procedural rules apply to the case as well for procedural matters. And the error, the first error that we believe the court made and which we've written about in our papers, was that the court used the procedural rule 2-619 to admit and substantively consider a declaration presented by the defendants which showed that two other companies, which the defendants claim are peers of Huron, paid director fees that were comparable to those of Huron. As a threshold matter, the court should not have even considered this substantively, because by doing so, using an Illinois procedural rule, they changed the Delaware substantive test. The Delaware substantive test, I'm sorry, you have a question? The Delaware substantive test requires a plaintiff to adequately allege, not prove, that demand is futile. There is no evidentiary battle. There is no battle of the inferences. It doesn't say with specificity, though, Delaware law? With particularity, correct. And again, we would submit that our complaint, due to the statistical analysis that we submitted and the other data that we submitted, does allege with particularity that those director fees were atypical. Okay, but you're leading it in Illinois, and Illinois provides it under 2-619. You can provide for an affidavit, and the court can consider that in rendering its decision on the 2-619, correct? That's true, but it can't use it to alter the Delaware substantive test, which is what happened in this instance. However, let's just assume for the sake of argument that the court acted properly in admitting those items and substantively considering them. Let's just assume that that's true. The court yet again made an error, because the court drew inferences from that information in the defendant's favor. The court can't do that at the pleading stage. At the pleading stage, the plaintiffs are entitled to all reasonable inferences. And what the court did when it saw this evidence of two other companies that paid director fees that were comparable to Huron's, the court inferred that that meant that Huron's director fees were typical. That's not the proper inference. We never allege that Huron paid the highest director fees in the country. We never made that allegation. As a matter of fact, as I mentioned just a minute ago, we submitted a study that shows that some companies pay $400,000 or more. The inference is that Huron and a couple of other companies that they submitted happened to all pay high director fees. There were 14 other peers that are listed in Huron's publicly traded filings that the defendants did not submit to the court, where the director fees are markedly lower. The director fees of Huron's other peers averaged under $143,000 a year. Counsel, did you ever make a motion to strike the, and I don't want to call it an affidavit, but it's a declaration, I believe is what they call it. Did you ever make a motion to strike that? We did not make a motion to strike. In our motion to dismiss opposition, we did argue that the court should not consider those items. Well, in Rails, which of course is one of the leading cases from Delaware in this area, footnote 10, the Delaware Supreme Court says that among other things that plaintiffs can use against those plaintiffs as opposed to defense, I assume it applies to the defense side as well. There's a variety of public sources from which the details of the court may be discovered, including the media and governmental agencies such as the SEC. So they don't seem to have a problem in Rails of putting in, considering SEC filings as to whether or not it's the procedural aspect of this case being, precluding this type of consideration. You know, General Motors and Braddock, two leading cases also from the Supreme Court of Delaware, those were dismissed, motions were dismissed, and they seem to be the cases on this issue of failure to make a demand, all seem to be motions that are dismissed. So is procedure correct, is it not, to proceed on a motion to dismiss when the defense argues there was no demand made? Yes, but the distinction that I would draw for the court is that the defendants didn't merely submit public filings. What they really submitted was an analysis. That was an analysis of director compensation that was designed to say, hey, Huron's director compensation is the same as other companies. It's not unusually high. And how is it different in your submission that of the top fortune 20, 15 of them or whoever it was, gave less to their outside directors? Because we're the plaintiffs and we're entitled to the benefit of all of the reasonable inferences. And the defendants used that analysis to obtain inferences in their favor, which they are not entitled to. And this actually is best illustrated by the option backdating cases, which we cited in our brief. A couple of them, just to rattle them off the top of my head. One is Belova v. Sharpe, another one is Edmonds v. Getty, and another one is Lynch v. Rawls. Very analogous situation where the defendants submitted a competing analysis of stock option grants. Again, all the data was based off publicly available information, publicly available filings. In each of those instances where the plaintiff submitted an analysis that said, it's likely that these options were manipulated, and the defendant submitted a competing analysis that said, no, it's not, in each of those instances, the courts ruled that they could not review or accept any of the inferences that the defendants were asking for based on those self-serving, self-submitted analyses at the pleading stage, which is exactly what this was. No motion to strike ever made it. No. There was no motion to strike. All right. Let me ask you this. Where do we find in the record your motion for leave to amend the pleadings? We did not file a formal motion for leave to amend. Rather in our motion to dismiss opposition, and also I believe that the motion to dismiss hearing, and I could be mistaken about that because I did not argue it and I wasn't at the hearing. I don't see it in the record, the motion to amend. There was not a formal motion made. Rather, there was a request in the motion to dismiss opposition that stated that if the court for any reason felt that it was going to grant any of the motions in part that we respectfully requested leave to amend, and I believe that that request was also made on the record at the motion to dismiss hearing as well. Do you think that's sufficient to include it in a pleading as kind of a footnote? Your Honor, I'm not sure what the Illinois procedure is, but we did not make a formal motion for leave to amend. And I will get to the amendment in a moment. If I ask about race judicata, I know we're short on time here, this issue of race judicata has come up. What law should be applied, Illinois or Delaware? We believe that Delaware law should be applied. Why? Because under Delaware law, there is no rule that says that a prior dismissal on demand futility grounds, especially one that was for different reasons and rationale in one case than has been presented in another case. Well, because it favors your argument, that's why we should do Delaware? Or what's the legal reason that Illinois wouldn't apply? The legal reason is that our demand futility argument, the one that I was just talking about with respect to the directors and their director fees, was not addressed in what I'll call the other derivative case. And again, Delaware courts have not directly addressed this issue, but Delaware courts have, as our papers show, indicated that just because there is a demand futility ruling in one instance doesn't stop another shareholder or even the same shareholder from having multiple bites at the demand futility apple. Under Delaware law, we believe that this race judicata principle would not apply. The other reason that, the other thing I'd like to draw to the court's attention about race judicata is that has nothing to do with the circuit court's order. The circuit court did not dismiss the case based on race judicata. That's an argument that's been raised for the very first time here on the field. But we can affirm on any, in Illinois, we can affirm on any basis in the record in these cases come up. Why shouldn't we follow a judge of Buckles' theories in what I would call Massaro 2, involving the same defendants, the same theory of recovery? That's the one at 772 F2nd, the dismissal of the second amendment complaint as opposed to her dismissal the earlier in the first amendment complaint. We're actually not advocating that the court follow Judge Buckles' order. Oh, I'm sure you're not. She dismissed it. Rather, what we are, I'm sorry, I apologize, I thought you were referring to the Securities Class Act. No, no, not the PSLRA. I misunderstood your question. The dismissal of the complaint against Huron based on the failure to make a demand. March 22nd. Because Judge Buckle never addressed the main demand futility theory that's been raised in this case by the plaintiff. That's why. Because there really isn't a prior ruling on that issue. When you say the main one, what are we talking about? Our main demand futility theory. There were several that were raised in the amended complaint, but the main one is that a majority of the board is not independent due to its director fees. That's an issue. Some of them, though, that are contained in your complaint. Certainly. And those are not addressed in our appellate brief. Our appellate brief largely deals with the independence argument, which Judge Buckle never reached and which Judge Buckle never ruled upon because the plaintiff in that other case did not raise it. I would like to turn to one other distinct, significant. Let me ask you a question. During the hearing before the trial court, did you ever suggest to the trial court that under the situation of a 2-6-19 motion, the movement admits the legal sufficiency of a complaint? Your Honor, I did not argue that motion, and I'd have to take a look at the transcript. The answer is I don't know. I don't know if that issue was raised. Although it appeared before the trial court as a 6-19 motion, the parties appear to be arguing this as if it were a 6-15 motion. I don't know how to respond because, again, I don't know what was said at the hearing. I'd have to look at the transcript very, very closely. In any event, the other distinct error that we'd like to discuss with the court is the circuit court's adoption in toto of the summary of the audit committee's internal investigation at Huron. Again, this was a pleading motion, and on that pleading motion, the court made a factual finding that the Board of Directors of Huron had no knowledge of the alleged accounting scheme as it was occurring. This was a distinct reversible error, which even if the court were unwilling to accept our other arguments, we believe warrants reversal and remand. How did the court get the summary from the audit committee? How was that? That summary came out of the – was part of the company's public filings and was, I believe, submitted by the defendants in their motion to dismiss or their reply, one or the other. I'm not quite certain. Did you ever ask did the court not consider that at the time? Was there an objection made in submission of that summary? There was not a motion to strike or a formal objection, but certainly in our motion to dismiss opposition, we argued that the court could not adopt those findings for the same reason I discussed before. The defendants are not entitled to inferences at the pleading stage, much less a factual finding that what their investigation concluded was actually true. Again, this is a Delaware corporation, and these directors and officers elected to form Huron as a Delaware corporation, which has real meaning. Under Delaware law, a board has the option of forming a special litigation committee in response to a shareholder derivative suit. The board did not decide to do that here. A special litigation committee is the only instance in American jurisprudence where a defendant can form a committee and then conduct its own investigation and terminate a lawsuit based on what it finds. It is the only such instance. The defendants rejected that option. Now, the reason they rejected it is probably pretty obvious, because when you form a special litigation committee, there's a cost that goes with that, too. The cost is that you have to make a record of your findings. You have to make a record of your independence. Both the plaintiffs and the court get to review that record, and the plaintiffs are entitled to discovery. The defendants did not do that here. Rather, they simply submitted an audit committee, a summary, rather, of an audit committee's findings and asked the court to take it at face value, which is exactly what the court did. But the audit committee was set up. I mean, that should be held for naught. We should suggest that they did nothing, then? I mean, there was an audit committee that was set up to investigate that. At the pleading stage, it's irrelevant whether the audit committee investigated or what it found. And Fleischman v. Wang, which is cited in our papers, is directly on point. There, again, the defendants asked the court to reach inferences in their favor of no wrongdoing based on a summary of an audit committee report that was contained in a company's public filings. And the Delaware Chancery Court held that in order to reach the inferences that the defendants were requesting in their brief, he would have to find that the audit committee was independent. He'd have to find that they conducted a full good-faith investigation and that their findings were fair and reasonable as opposed to a, quote, litigation-inspired whitewash. Well, let's look at a real big picture again. In response to Justice Conner's query about why res judicata should not apply or which state's rules on res judicata should apply, you argued in the Delaware. I know Braddock stands for this proposition, that when cases are dismissed for failure to make a demand, while it's final and appealable, it's not final and appealable for res judicata. As you say, you get multiple bites of the apple. That being so, why don't we just file the demand in this case? How hard could that be just to go tell them it's been litigated now for a couple of years, you've lost everywhere, near as I can tell. How about we finally break down and say, send them a letter. Now, we demand money. We demand justice in the corporate world. Why not? Your Honor, I will not hide what I do for a living. I am an attorney with a plaintiff's firm that specializes in shareholder derivative litigation. We make demands all the time. We make demands when we take a look at the board and we believe that a demand is warranted. When we take a look at a board and we believe that we've met, that we can meet the exception, we don't bother making a demand. And in this instance, we didn't make a demand because we saw what these directors were getting paid. There was no reason to. When did you file your complaint? I believe it was in the summer of 2009. Okay, so approaching two years, eight months. How long does it normally take a corporation to get back to tell guys like you to say, no, we're not giving you any money? That's a very interesting question. Sometimes we don't get a response at all. Sometimes we get a response within a month. Most of the time I would say about a year. But certainly that would be quicker than two years and eight months, the length of this litigation. Sure. So it's not really slowing you down. I'd suggest get you up. Get to this ultimate decision of what's right. First of all, again, I would respond by saying based on what this board was being paid, we saw no reason to make a demand. But if we had made a demand, Your Honor, I have seen hundreds of demands made. I have never seen one accepted. Never. I've never seen it. Then why not do it? You know that they're scheming corporations. Everybody knows that. What the heck? They're corporations. They're not people. I don't care what the Supreme Court says. We know they're going to say no. It's like insurance companies say, no, we're not paying for widows and orphans. What do we care? But you make the demand anyway. It's the job of the plaintiff's bar. Make the demand. Hold them to the feet of the fire. And then they'll say no. They'll sign the degree and all the guys. Well, then you file suit. And then you don't have this problem. You're not in front of me saying, well, I didn't have to demand two and a half years ago because it would have been a waste of time. Okay. What you have in that situation is a bigger problem than if you brought a demand futility suit because when you bring a demand refuse lawsuit, the business judgment rule presumptively applies to the board's investigation and its decision to reject the demand. It is a high hurdle, as I started out with in my presentation, to allege demand futility. It is a much higher hurdle to allege demand refusal because of that business judgment rule presumption on the board's response. Basically, if you want to win in the demand refusal context, you have to demonstrate that the board did not investigate in good faith, did not make its decision in good faith, and that is an incredibly difficult showing to make, especially, again, without discovery, with no evidentiary record. We could discover it by then, wouldn't we, if you had demand refusal or no? I'm sorry. I missed the question. If they refused, you know, sent you a year or a month, said we're not paying the money, you would get discovery, wouldn't you? I don't know. No, no. You would only get discovery once you established at the pleading stage that the refusal was improper. Okay. If you surveyed the Delaware jurisprudence or jurisprudence from other states in shareholder derivative cases, what you'll find in that most demand futility cases, the court finds that demand was required, but there's a number of cases where demand is excused. In the demand refused context, the percentage of successful plaintiffs is far, far lower. It is a very, very difficult test to stand on. I'm not in the line of work, so I was wondering how that happens. Now, that said, we make demands where we believe it's warranted. We do it all the time. We did not do it here because taking a look at this board and how they were paid, it made no sense to do so. You have some time to reply. We'll hear from you in a second. Thank you. Ms. Skestis? Skestis. Skestis. Thank you. Good afternoon, Your Honors. The insurmountable flaw in plaintiff's case, both in the court below and here on appeal, is that plaintiff needed to make a pre-suit demand on Huron's board of directors, and he failed to do so. Plaintiff tries to argue in his papers just a few minutes ago that a demand would have been futile because Huron's directors were incapable of impartially considering a demand. But any challenge to the impartiality of Huron's directors is unreasonable as a matter of law under the circumstances presented here. Huron's board is made up entirely of outside directors who are presumed to be independent and disinterested. When Huron's board learned of a potential accounting issue in late spring 2009, it promptly asked its audit committee to conduct a broad investigation. The audit committee retained outside accounting and legal experts to help it in its work. At the end of the investigation, the audit committee and the board concluded that the company had made accounting errors and needed to restate its historical financial results. The board publicly announced the restatement, as well as the details of its investigation and conclusions. And at the same time that it made that announcement, it also announced the resignation of prior management and the implementation of new control procedures to prevent similar accounting mistakes going forward. In light of all these voluntary and affirmative steps that the board took, steps that, to borrow a phrase that plaintiff used several times in its briefs, clearly rocked the boat at the company, there's no reasonable basis from which to draw the inference pressed by plaintiff that the board could not have properly evaluated a shareholder demand. That's precisely why Judge Agrin dismissed the case below with prejudice, and it's also why Judge Bucklow dismissed a virtually identical federal derivative case with prejudice. Counsel, can I ask you the U-102619 motion? Correct. Does that admit the sufficiency of the complaint, and isn't that an issue for you? You're admitting the sufficiency of the complaint. We're admitting the reasonable inferences that you can draw from the allegations in the complaint. 2619 is when you are trying to dismiss the case based on an affirmative defense. Why not? You do admit the legal sufficiency of the complaint. We're accepting the allegations in the complaint as true, but a court, as Judge Agrin held, is not required to accept every tortured inference that plaintiff puts forward. It's only reasonable inferences in the demand futility context. As far as the affirmative matter you presented under U-2619, it was called a declaration. It was not an analysis. I'm glad you asked me that question. It was not an analysis. It was a declaration, the kind that says, attached as Exhibit 1 are true and correct copies of CRA's SEC filings. Under Supreme Court Rule 191, under the 2619, affidavits can be attached, and the affidavit has to be a personal knowledge. Does it not? Under Supreme Court Rule 191? I don't see in your affidavit that your affiant has a personal knowledge. Excuse me. I don't believe our affiant said that. They said these are true and correct copies of publicly available SEC filings. And to the extent there was that sort of challenge, that's not something that plaintiff raised below, and he did challenge this affidavit on many or declaration on many grounds. Did you ever think about filing under 2619 Section 3, which talks about there's a litigation pending in another jurisdiction, which is the same or similar? Initially, we actually tried to stay the federal case in favor of the state case because the state case was ahead of the federal case. Judge Bucklow denied our motion because, at that time, the federal case had a proxy claim, a federal securities claim, and she said based on that she wasn't going to stay the federal case. And then the next opportunity we had to present the issue was this appeal because she didn't dismiss the federal case with prejudice until this appeal was pending. How many of these suits are pending involving defendants? Right now? This is at the beginning of time. This is only the one that's alive. How many were filed and then actually had something happen in a court of law as opposed to being worked out or procedurally? You mean against Huron? Yes. Okay. Sorry. As opposed to the whole world. This is the only case that's pending. There was a securities class action which the company settled, I think, more than a year ago at this point. There was the federal derivative class action, which was, I believe, four complaints consolidated into one. And then there's this current action, and this is the last civil litigation pending against Huron. Let me ask you, first, race judicata. It wasn't the decision in the federal court. Didn't it come down after the ruling of Judge Agrin? It came down after the ruling of Judge Agrin, and so that's why we're saying it bars this appeal, and this was the first opportunity for us to raise that. Well, no, no, no. I'm sorry. I'm mistaken. The final of the federal court came down on March 22, 2011. Isn't that right? Correct. And this court's ruling was on October 10? Correct. Correct. Exactly. Exactly. Exactly. And in terms of the appropriate law for race judicata, we submit that there's absolutely no basis to argue that Delaware law applies to the question of race judicata. None of the cases plaintiff cites in his reply brief stand for that proposition, and we are aware of no authority that would have this court apply Delaware law. Well, there was no appeal then in the 77, Bucklow's March 27th. There was no appeal, and the time for appeal has passed. Correct. I'm still confused why that would still be race judicata. It's a lower court. They don't see themselves as a lower court, but they are. Why would we be bound by what Bucklow did? Because the preclusive effect, and this is something that this court held, and the case is Peregrine Financial Group v. Trade Maven. The site is 391 Illinois App 3D, 309, 1st District, 2009. Federal law governs the preclusive effect to be given to a federal court judgment. And then the U.S. Supreme Court has held, and that case is Taylor v. Sturgewell, 553 U.S. 880, 2008. The U.S. Supreme Court has held that where the federal court that rendered the judgment was exercising diversity jurisdiction, which is what Judge Bucklow was exercising, federal law incorporates the rules of preclusion applied by the state in which the rendering court sits, and that would be Illinois law. Was that your brief? And I'm not complaining. It wasn't in our brief because they raised this for the first time in their reply. I like dispositive things, Frankie. I'm sure it's a surprise to surprise me, having read this stuff. Okay. Your Honor, it never occurred to us that they would argue that Delaware law applied to race judicata. Had we anticipated that, we might have put some of these sites in our briefs. But I'll be honest, anything you can do to win. It seems to me, I used to be an attorney before I did this, and so you would put in, and it would seem to me that, well, if you have a case that says no, the federal district court having ruled on it, it cannot be challenged, that decision has a producive issue effect later on in all state courts, including their appellate courts and supreme courts. Wow, I'd have gone with that right away. We thought the Schnitzer court that we cited from this court was very on point and was very persuasive authority. One other site to. What's the collateral estoppel case? Is there an alliance? And race judicata as well. The other case that I think would be helpful is City of Chicago versus St. John's United Church of Christ, which is 408 Illinois App 3D 505, and that's 2nd District, 2010. Counsel, if this court finds that demand and utility is not adequately fled, do all the claims, do any of the claims survive? No claims survive. All of the claims go away. And turning to the demand-futility argument, there is no dispute that ordinary director's compensation is not sufficient to show demand-futility. The standard for showing that director's compensation creates a compromising interest is extraordinarily high. You have to show that fees are so lavish that a mechanical application of the presumption of impartiality would be totally at variance with reality. I think a really important point is that there is no case and no court applying Delaware law that has ever found that the size of director's fees standing alone were sufficient to defeat the demand requirement. No case has done it, and we don't think there's anything about the facts presented here that would make this an appropriate case for that kind of decision. The other thing is we think it is perfectly appropriate for Judge Agrin to have considered the Earnhardt Declaration and the other SEC filings. We think it's appropriate under Illinois law. We think it's appropriate under Delaware law. But it doesn't really matter because even if you exclude the Earnhardt Declaration, as we argue in our papers, and that's at pages 22 through 28 of our papers, because I know time is short, but as we argue there, even without the Earnhardt Declaration, plaintiffs don't come close to meeting the standard that would be required to defeat demand futility based on the size of the director's compensation. With respect to the plaintiff's point about Judge Agrin's comments on the audit committee investigation, that comes from Huron's Form 10-K-A. Huron's Form 10-K-A is quoted and relied on extensively in plaintiff's complaint. And plaintiffs also make a claim that Huron's directors knew or should have known about the accounting issues that led to the restatement. They make that claim based on the 10-K-A. So all Judge Agrin does in his opinion is say, I'm going to read this document that plaintiffs rely on, and I'm going to see if it supports that very conclusory allegation that Huron's directors knew or should have known. What Judge Agrin then says is, I've read the document, and it doesn't say that at all. It says the opposite. It doesn't say the directors were aware. It says that in certain instances management wasn't aware, and in certain instances they may have been aware, but they misapplied the appropriate accounting literature. So he's not endorsing. He's not engaging in a battle of the inferences. He's not doing any of those things. He's simply looking at the inferences that plaintiffs are asking him to draw and determining whether they're reasonable. Counsel, I can offer you this quote. The directors of Huron, inside, outside. Completely outside. Did you hear your opponent say that they were inside? I did. I heard him say that they were inside. At the time the complaint was filed, Huron's board was composed entirely of outside directors, and that's the point in time where you look at the composition of the board. I believe today there is a single inside director, but at the time period when they would have been making their demand, which is the relevant time period, all outside directors. Plaintiff does try, I believe, and I believe it's to come within this compensation plus line of cases, does try to say that Huron's directors were paid more, the same as or more, than its executives, but that's really objectively inaccurate. When plaintiff makes that comparison, he excludes equity compensation for Huron's executives. So he compares their base salary to the full compensation factors that the directors receive, compensation and equity. We've pointed out this mistake at least two times now, and plaintiff has never corrected that error. When you look at total compensation packages, Huron's executives make twice as much as its directors. If you look just at base salary or that, if you take out equity, the executives make three times as much as Huron's directors. The other thing is, you know, the idea of an inside director, it all goes back to the inability to be impartial, perhaps, because you're worried about losing your full-time job or you're beholden to somebody. Again, this board, at the time of the restatement, announced the resignations of management. It's just impossible to see, and, you know, I think this is why plaintiffs can't allege it adequately, how they're beholden to anybody. They made a restatement which, plaintiff alleges, drastically impacted the stock price for Huron Securities. That has a direct impact on the director's compensation. They didn't hesitate to make that decision in 2009, and there's absolutely no reason to believe that they wouldn't be able to bring the same impartiality to a shareholder demand. If there are no other questions, we'll rest on our papers. Thank you. Thank you. Gordon, is that next, sir? May it please the Court, I'll try to be brief. You've got two minutes. You said something. Absolutely. The arguments with respect to failure to make a demand in res judicata apply equally to Mr. Burge, Mr. Holdren, and Mr. Lipsky. It does require dismissal or the affirmative dismissal of the claims against everyone. I wanted to talk very briefly about a third grounds for dismissal. I don't need to talk that fast. Make your point. Okay, very good, which is a failure to state a claim. And tellingly, plaintiffs do not discuss this argument at all in either of their briefs, notwithstanding the fact that we filed a 25-page brief on the subject. And that failure is telling because the Sherman v. Ryan case, which came down from this Court in 2009, is on all fours, both on demand futility and also on a failure to state a claim. In that case, as this one, what was alleged was that the executives had some knowledge in some cases but not others, but did not appreciate the consequences of that knowledge, and so there was no knowing violation. And so in Sherman v. Ryan, this Court affirmed dismissal on that ground. The only other argument I want to make is to respond to the one argument the plaintiff does make, which is that the appropriate disposition here on the failure to state a claim argument is to reverse and remand. They cite one case from 10 years ago. It's a summary judgment case where there were many complicated factual issues. As Justice Quinn notes, and as hundreds of cases have held, this dismissal can be affirmed on any grounds, and should it come to that, this Court should consider any grounds based on the record that would justify affirming. Those grounds are before the Court. They've been fully briefed at least by one side, and plaintiffs' unilateral choice not to brief that shouldn't change that. So unless there are any questions, that's all I have. Thank you very much. Thank you very much, Your Honors. Ms. Cohen. May it please the Court, I will be very, very brief as well. PwC's arguments do parallel those of the other defendants, and we certainly agree the Circuit Court's order should be affirmed. But PwC's position on this appeal is also unique for two reasons. First, PwC is an independent third party, an outside auditor, and so it does have arguments that are slightly different than those of the company, its officers and directors. Among other things, whether or not directors could have been impartial in evaluating whether or not to sue themselves or their fellow directors for compensation reasons or any other reason has no bearing on whether they could have been impartial vis-a-vis PwC. Second, plaintiffs have failed at every stage of this litigation, including this appeal, to address PwC's unique position and arguments. Plaintiffs have been completely silent with respect to PwC and therefore cannot possibly show that reversal of the Circuit Court's order is warranted with respect to PwC specifically. In their complaint, in their Circuit Court briefing, at the motion to dismiss hearing, in their briefing before this Court, at today's hearing, plaintiffs have not made a single showing or even a single argument as to how demand could have been excused with respect to PwC as a third party or how the conclusory allegations in their complaint could possibly state a claim against PwC. So in short, PwC maintains that even if this Court were to find that demand were somehow excused with regard to the other defendants, plaintiffs' claims against PwC still fail, both under 2619 for failure to make a demand and under 2615 for failure to state a claim. And you fell in motion to vote? We did, yes. Thank you. Thank you. For the fee, Mr. Becker? I just have a few quick points to respond to arguments that were raised by the various defense counsel. First, with respect to counsel for the company and for most of the individual defendants, the Court heard from defense counsel that there's no case in which director fees were found to have raised doubt as to directors' independence. That's true. However, again, as we emphasized in our papers, the independence analysis is contextual in nature and it's case-by-case on an individualized basis. And none of the cases that the defendants have provided the Court with presented the scenario where directors admittedly were paid high based on an admission in their own public filings that they paid fees that were higher than those of most other companies in order to attract and retain talented directors. It's well within the Board's business judgment to do that. They can pay directors whatever they want. But again, just like the decision to create an SLC or not create an SLC, you have to sleep in the bed that you make. And they choose to pay their directors high so that they can retain and attract talented people. Okay, that's fine. But the reality is when a shareholder sees what they're paying those directors for that, there's a cost. And the cost is that their independence is going to be reasonably called into question. So there's no case that addresses that exact scenario. The second point that I'd like to make goes to the Court's acceptance of the Audit Committee conclusions. Defense counsel characterized it as not drawing an inference or making a factual finding. The plain language of the Court's opinion makes it very clear that the Court made a factual finding based on the summary of the Audit Committee report that the defendants authored. What the opinion says at page 7 is it quotes the Audit Committee report, and then it says, not only were the director defendants, including the directors on the Compensation Committee, unaware of the redistributions. Once they learned of their extent, the entire Board decided to replace Huron's CEO, CFO, and CAO and to implement new oversight procedures. That's a factual finding by the Court that the Board had no knowledge or involvement in the accounting scheme as it occurred. The Court can't make that kind of finding at the pleading stage based on an Audit Committee report. If there was an SLC report, that's a different story. But again, there's no SLC here. The final point I'd like to make in response to counsel for the company and for the individuals is that they talked about the director fees as being significantly less than what the executives at Huron were making. So in other words, we've alleged that the directors were being paid by executives, and they're saying, no, no, no, no, no, no. That's only if you look at the base salaries. If you look at the equity-based compensation, then it's not even close. Well, the equity-based compensation in this case, as we alleged in our complaint, was based on false financial results. The equity-based portion of the executives' compensation was based on the company's net revenues and its earnings per share, which were falsified to a significant degree between the years 2006 and 2008 and the first quarter of 2009. The company's net income, I believe, was reduced by 57 percent. It's either 57 percent or $57 million, but in any event, it's half, essentially half. So if you were to have the equity-based compensation that the executives received during that time period, I think the executives' compensation would start to look a whole lot more like the directors' total compensation. Then I'd like to address the arguments that were made by counsel for PwC and for Defendants Holdren, Burge, and Lipsky. In essence, both of them argued that we haven't addressed the substantive claims in our briefing. The only reason we didn't do that is because the court never got to it. There was no reason to brief up something that the court never addressed. In the record, our motion to dismiss opposition is there. It very clearly explains why we've alleged claims upon which relief can be granted. And again, we submit that they said it's telling that we didn't address this. We think it's telling that they did. Our appellate brief deals with all sorts of errors that the court made, and they largely disregarded those and brought up a whole set of issues that the court never even got to. We think that's what's telling. And again, if you were to look at our motion to dismiss opposition, I don't think there's any question that there's claims that have been raised upon which relief can be granted. This is a claim based on a restatement of 13 fiscal quarters at Huron, at which, again, compensation was paid based on those false financial results. That's clearly an unjust enrichment claim. There's no mens rea requirement for an unjust enrichment claim. And again, you have an admission that the financial results were inadequate, that they can't be relied upon, that the company's internal controls were inadequate. We've raised claims for breach of fiduciary duty, both for issuing false and misleading statements. But as you say, those aren't before us, right? That's correct. That's correct. Thank you. Thank you. This case will be taken under advisement, and this court will be adjourned.